| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| LEO ROGERS DUGAS and VALERIE DARLENE DUGAS, § § § Appellants, § § *versus* § CIVIL ACTION NO. 1:09-CV-990 § CLARON CORPORATION, § § Appellee. § | |

**MEMORANDUM AND ORDER**

Pending before the court is an appeal of a decision rendered in the United States Bankruptcy Court for the Eastern District of Texas granting in part and denying in part Appellants Leo Rogers Dugas ("Mr. Dugas") and Valerie Darlene Dugas's ("Mrs. Dugas") (collectively, "the Dugases" or "Appellants") Motion to Disgorge and Transfer of Funds into the Registry of the Court and Awarding Damages for a Willful Violation of the Automatic Stay. *See In re Dugas*, No. 94-10027, 2009 WL 3297958 (Bankr. E.D. Tex. Oct. 13, 2009). Having reviewed the opinion, the record, the submissions of the parties, and the applicable law, the court is of the opinion that the bankruptcy court's decision should be affirmed.

I. Background

This case has a long and complicated history that the court will not describe in detail.[1] The facts as they pertain to this appeal are as follows: In 1994, the Dugases filed a Chapter 13 bankruptcy action in the Bankruptcy Court for the Eastern District of Texas. In their bankruptcy schedules, the Dugases claimed an interest in certain funds that were the subject of a separate

---

[1] For a more complete description of the procedural background, see *In re Dugas*, 2009 WL 3297958 at *1-7.

interpleader action (the "Howell Action") that was pending before another court at that time.[2]  On February 9, 1994, Appellee Claron Corporation ("Claron"), which was also a party to the Howell Action, filed a notice of appearance in the Dugases' Chapter 13 case.

At or about the same time, Claron learned that certain funds related to the Howell Action (the "funds") had been deposited in the registry of the County Civil Court at Law No. 1 of Harris County, Texas (the "state court").  Claron filed a motion for release of the funds, which the state court granted on October 7, 1994.[3]  Appellants learned of the transfer and, on August 22, 1995, filed their motion to disgorge, seeking an order from the bankruptcy court directing Claron to return the funds to the state court registry.  Following a hearing at which the Dugases presented at least thirteen exhibits, the bankruptcy court denied the motion, finding that they had "totally failed to produce any evidence" that they were entitled to relief.

The Dugases appealed the bankruptcy court's ruling to the United States District Court for the Eastern District of Texas, which affirmed.  Thereafter, the Dugases appealed to the United States Court of Appeals for the Fifth Circuit.  On March 3, 1999, the Fifth Circuit reversed the two previous rulings and remanded the case to the bankruptcy court for reconsideration of the motion.  The Fifth Circuit construed the motion as an action to enforce the automatic stay provisions of 11 U.S.C. § 362 and held that, although Appellants may not have presented sufficient evidence to prevail in their action, it was nonetheless error for the bankruptcy court to

---

[2] Specifically, in their "Schedule B - Personal Property," Appellants listed as an account receivable "JSB Petroleum Inc. (Pending lawsuit)."  JSB Petroleum, Inc. ("JSB") was a party to the Howell Action and claimed an interest in the interpled funds.  JSB was also Mr. Dugas's former employer and a company in which the Dugases owned stock.

[3] Claron initially received $24,658.33 from the state court registry.  Subsequently, Claron requested and received two more transfers:  one on December 8, 1995, for $14,778.46, and another on June 10, 1996, for $36,662.33.

conclude that they "failed to produce any evidence" in light of the numerous exhibits presented at the hearing.

The bankruptcy court reset the motion for a hearing, but Claron failed to appear. On August 24, 2001, based on the uncontested evidence presented by Appellants, the judge found that Claron had violated the automatic stay and ordered Claron to pay actual and punitive damages totaling $31,020.00 and to return the funds to the state court registry. After learning of the decision, Claron filed a notice of appeal followed by a motion for relief from judgment pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure. While Claron's appeal was pending, the bankruptcy court conducted a hearing on the Rule 9024 motion. During the hearing, Mr. Dugas admitted under examination that neither he nor Mrs. Dugas had any legitimate claim of ownership in the funds. On October 24, 2001, pursuant to the procedure described in *Winchester v. United States Attorney*, 68 F.3d 947, 949 (5th Cir. 1995), the bankruptcy judge issued a notice of intent to grant Claron's motion for relief upon remand or other disposition by the district court. Claron subsequently filed a motion to remand the appeal, which the district court granted on May 28, 2002, treating Claron's motion as a voluntary dismissal. On August 22, 2002, the bankruptcy judge entered an order granting Claron's Rule 9024 motion and vacating its August 24, 2001, order.

After considerable delay due to action taken by the Dugases in other courts,[4] the bankruptcy court reset the motion for another hearing on November 18, 2008. On October 13, 2009, the bankruptcy judge entered the order that is the subject of this appeal. The judge determined that, although Appellants ultimately failed to prove that they had any right to the funds,

---

[4] *See In re Dugas*, 2009 WL 3297958, at *7 n.48.

Claron's unilateral acts to remove the funds violated the automatic stay. The judge awarded the Dugases actual damages in the amount of their costs to prosecute the stay violation ($1,020.00) along with post-judgment interest and denied all other requests for relief.

On December 1, 2009, the Dugases filed their Notice of Appeal from this order. The same day, they submitted their Designation of Items to be Included in the Record of Appeal and Statement of Issues to be Presented on Appeal, setting forth the following issues for review by this court:

    A.    Whether Claron's voluntary dismissal of its appeal of the bankruptcy court's August 24, 2001, final order renders the bankruptcy court's October 13, 2009, order invalid.

    B.    Whether Claron is barred by the principles of *res judicata*, issue preclusion, jusdicial estoppel, and law of the case doctrine from asserting a claim to the funds.

    C.    Whether Clamont Energy Corporation, Inc.'s Chapter 7 trustee had a valid claim to the funds.

    D.    Whether the bankruptcy court erred in allowing Claron's appearance at the November 18, 2008, hearing, in the absence of a corporate representative and with knowledge that Claron's corporate charter had been forfeited.

    E.    Whether the bankruptcy court erred in inferring that Claron was the owner of the funds absent proof and in light of the Fifth Circuit's mandate.

    F.    Whether the bankruptcy court followed the dictates of the Fifth Circuit's mandate.

    G.    Whether Texas state law would hold Clamont Energy Corporation, Inc.'s second sale by a Chapter 7 trustee superior to its first sale of the same property by a Chapter 11 trustee when the first sale had not been set aside.

    H.    Whether, given all the facts, the bankruptcy court's October 13, 2009, order reached an absurd result.

II.   Analysis

   A.   Bankruptcy Appeal—Jurisdiction and General Standard of Review

This court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(c)(2), which provides that an appeal from the bankruptcy court to the district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ." Therefore, "when reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court . . . ."[5] *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992). In reviewing a decision of the bankruptcy court, Rule 8013 of the Federal Rules of Bankruptcy Procedure requires the court to accept the bankruptcy court's findings of fact unless clearly erroneous and to examine *de novo* the conclusions of law. *See Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008); *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007), *cert. denied*, 552 U.S. 1180 (2008); *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004); *In re Homeowners Mortg. & Equity, Inc.*, 354 F.3d 372, 375 (5th Cir. 2003). A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed. *See Wilson v. Huffman (In re Missionary Baptist Found. of Am.)*, 712 F.2d 206, 209 (5th Cir. 1983); *see also In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003) (quoting *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003)).

---

[5] In accordance with the Fifth Circuit's mandate (as discussed in greater detail below), the bankruptcy court considered Appellants' motion as an action to enforce the automatic stay pursuant to 11 U.S.C. § 362. Courts have determined that actions to prosecute automatic stay violations are core proceedings. *See, e.g., Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir. 1986); *Ivy v. City of Carrizo Springs*, No. SA-03-CA-0694-RF, 2006 WL 870634, at *3 & n.7 (W.D. Tex. Mar. 16, 2006); *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 123 (Bankr. N.D. Tex. 2003); *In re Fischer*, 242 B.R. 908, 911 (Bankr. E.D. Tex. 1999).

5

B.      Whether the Bankruptcy Court Followed the Fifth Circuit's Mandate

In Points of Error F and H, the Dugases contend that the bankruptcy judge failed to follow the Fifth Circuit's March 3, 1999, mandate. Specifically, they argue that the judge failed to adjudicate proper ownership of the funds. They also broadly attack the judge's decision, stating that the bankruptcy court failed to "apply[] the law to the facts and thereby reach[ed] an absurd conclusion." Having examined the Fifth Circuit's mandate and having reviewed the bankruptcy judge's findings of fact and conclusions of law, the court determines that Appellants' arguments are without merit.

On appeal, the Fifth Circuit construed the Dugases' motion as an action to enforce the automatic stay provisions of 11 U.S.C. § 362(a). *See In re Dugas*, No. 98-40079, 1999 WL 152967, at *4 (5th Cir. Mar. 3, 1999). As the Fifth Circuit stated, "[a]lthough [the Dugases'] motion did not lay out with specificity [their] statutory basis for seeking disgorgement . . . we find that a suit seeking relief from acts that impair the property of a bankruptcy estate is presumptively an action to enforce the automatic stay." *Id*. Thus, the issue to be resolved on remand was "whether the stay was violated when the Harris County court . . . released funds to Claron." *Id*. at *5. Accordingly, the bankruptcy court correctly analyzed the motion under the framework of 11 U.S.C. § 362.

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay of several categories of judicial and administrative proceedings that affect the property in the debtor's bankruptcy estate. 11 U.S.C. § 362(a)(1); *Board of Governors of the Fed. Reserve Sys. v. Mcorp Fin., Inc.*, 502 U.S. 32, 39 (1991); *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008). The stay is designed to prevent a

scramble among creditors to seize as much property as possible from the debtor's limited estate by providing "breathing room" for the debtor and the bankruptcy court to institute an organized repayment plan. *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005); *In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004). The purposes of the stay are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution of the bankruptcy estate. *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985).

Section 362(k) of the bankruptcy code gives debtors a private right of action for stay violations. It provides:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). A "willful" violation does not require specific intent to violate the automatic stay; rather, the debtor is entitled to relief if the defendant knew of the automatic stay and its actions were intentional. *Campbell*, 545 F.3d at 355; *In re Chesnut*, 422 F.3d at 302. Furthermore, whether a defendant believed in good faith that it had a right to the property in question is not relevant to whether the act was "willful" or whether compensation must be awarded. *Campbell*, 545 F.3d at 355; *In re Chesnut*, 422 F.3d at 302. Thus, the elements to establish a claim under § 362(k) are: (1) that the defendant knew of the existence of the stay; (2) that the defendant's actions were taken intentionally; and (3) those actions constituted a violation of the stay. *Campbell*, 545 F.3d at 355; *In re Repine*, 536 F.3d 512, 519 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1008 (2009); *In re Chesnut*, 422 F.3d at 302.

The first two elements are met in this case as neither party disputes that Claron knew of the Dugases' bankruptcy action and that Claron intentionally sought release of the funds from the state court registry. As to the third element, § 362(a)(3) makes "any act to obtain possession of property of the [bankruptcy] estate" a violation of the automatic stay. By negative implication, any act to obtain possession of property that is not part of the bankruptcy estate generally does not violate the stay. *In re Chesnut*, 422 F.3d at 302. The property of the bankruptcy estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Here, the only evidence Appellants presented to the bankruptcy court at the November 18, 2008, hearing showing any interest in the funds was (1) their bankruptcy schedules, which reference the funds as an "account receivable," and (2) Mr. Dugas's testimony that Jeff Buescher ("Buescher"), president of JSB, verbally assigned him an interest in the funds. The Dugases' mere inclusion of the funds in their bankruptcy schedules, however, does not validate their claim to ownership. *See In re Castillo*, No. 08-50167, 2009 WL 3854261, at *3 (Bankr. S.D. Tex. Nov. 17, 2009). In addition, the bankruptcy judge did not find Mr. Dugas's statements concerning the verbal assignment credible in view of the fact that his testimony was uncorroborated and, despite the almost fifteen-year history of this case, had never been asserted prior to the November 18, 2008, hearing. Furthermore, this testimony contradicts Mr. Dugas's earlier statements at the hearing on Claron's Rule 9024 motion that he had no claim of ownership in the funds. Accordingly, this court finds no error in the bankruptcy court's conclusion that Appellants failed to establish that the funds were part of the bankruptcy estate.

Nevertheless, as the bankruptcy court correctly observed, the Dugases' failure to establish that the funds constituted property of their bankruptcy estate does not necessarily preclude them from relief under § 362(k).[6] As the Fifth Circuit has stated, "[t]he policy and structure of the Bankruptcy Code suggest that the stay covers at least some arguable property" and "in the face of uncertainty or ambiguity, courts should presume protection of arguable property." *In re Chesnut*, 422 F.3d at 303. Accordingly, unilateral acts to obtain possession of property that is of uncertain character at the time of the acts may constitute a violation of the automatic stay. *Id*. In such instances, the party seeking seizure must first obtain relief from the bankruptcy court. *Id*. at 304. Not every bankruptcy petition that claims an interest in property, however, "will transform what is obviously not property of the estate into arguable property that is subject to process requirements." *Id*. at 306. Frivolous and baseless claims of ownership are not protected by the automatic stay and may subject the debtor to sanctions. *See In re Chesnut*, 300 B.R. 880, 888 (Bankr. N.D. Tex. 2003), *rev'd*, 311 B.R. 446 (N.D. Tex. 2004), *rev'd*, 422 F.3d 302 (5th Cir. 2005).

Here, the bankruptcy judge determined that, at the time Claron sought release of the funds, Appellants' claim of ownership was not so "transparently baseless or frivolous as to have freed Claron from seeking an adjudication of those asserted debtor rights before [the Bankruptcy] Court." Claron had notice of the Dugases' bankruptcy petition and that they had asserted some interest in the funds. Claron could have obtained relief from the automatic stay but chose instead to circumvent the court and unilaterally seek release of the funds. As the bankruptcy court

---

[6] It should be noted that Appellants did not assert this position in either their motion or in any subsequent filing. Rather, the bankruptcy court raised this issue—from which Appellants ultimately benefitted—*sua sponte*.

9

observed, this is the type of independent action that the Fifth Circuit has proscribed. *See In re Chesnut*, 422 F.3d at 303. Accordingly, the bankruptcy judge did not err in finding that Claron violated the automatic stay.

Having determined that Claron violated the automatic stay, the remaining task for the bankruptcy court was to determine the amount of damages to which the Dugases are entitled. Section 362(k)(1) provides that an individual injured by a violation of the automatic stay shall recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." "[Actual] damages under § 362(k) must be proven with reasonable certainty and may not be speculative or based on conjecture." *In re Collier*, 410 B.R. 464, 476 (Bankr. E.D. Tex. 2009). Thus, even if a stay violation occurred, the debtor must establish actual damages as a prerequisite to an award in his favor. *Id.* The only actual damages that Appellants proved in bankruptcy court are $1,020.00 in costs which they incurred in prosecuting this action. As discussed above, the Dugases have not proven that they have any direct interest in the funds that were removed from the state court registry. Accordingly, to the extent they seek recovery of actual damages in the amounts of the funds released to Claron, the bankruptcy judge correctly determined that such an award would be based on pure speculation and, thus, improper under § 362(k).

Section 362(k)(1) also allows debtors to recover punitive damages for stay violations "in appropriate circumstances." The Fifth Circuit has interpreted "appropriate circumstances" to require "egregious, intentional misconduct on the violator's part." *In re Repine*, 536 F.3d at 521 (citing *In re Knaus*, 889 F.2d 773, 776 (8th Cir. 1989)). As the bankruptcy court noted, Claron's "misconduct" in this case involved property in which the Dugases ultimately had no interest.

While actual damages are appropriate in view of Claron's unilateral action, this court agrees with the bankruptcy court that Claron's acts cannot be characterized as sufficiently "egregious" to merit an award of punitive damages.

In support of their contention that the bankruptcy court failed to follow the Fifth Circuit's mandate, Appellants point to *dicta* within the Fifth Circuit's March 3, 1999, opinion stating that the court is "troubled that these funds were released to Claron given that neither the settlement agreement nor any other determination of the bankruptcy court appeared to extinguish or resolve the Dugas's claimed interest to the same funds." *See In re Dugas*, 1999 WL 152967, at *5. Appellants argue that, because the bankruptcy court failed to adjudicate Claron's ownership interest in the funds, it failed to follow the Fifth Circuit's instructions. As discussed above, however, the Fifth Circuit made clear that the issue to be decided on remand was whether Claron had violated the automatic stay by seeking release of the funds without leave of the bankruptcy court. *Id*. The only ownership issues relevant to this inquiry were whether the funds were part of the Dugases' bankruptcy estate and/or whether the Dugases had an arguable claim to the funds at the time of the transfer. The bankruptcy judge considered both of these issues in his October 13, 2009, order. To the extent Appellants contend that the judge erred in failing to adjudicate Claron's or any other third party's interest in the funds, such argument is without basis.

    C.    <u>Whether the Bankruptcy Court Lacked Jurisdiction to Enter its October 13, 2009, Order</u>

In Point of Error A, the Dugases contend that the bankruptcy court lacked jurisdiction to enter its October 13, 2009, order. Specifically, they maintain that when the district court dismissed Claron's appeal of the bankruptcy court's August 24, 2001, order awarding actual and punitive damages to them based on uncontested evidence presented during a hearing at which

11

Claron failed to appear, the bankruptcy court's earlier order became final and unappealable. Thus, they argue, the bankruptcy court was divested of power either to vacate its earlier ruling or reconsider the motion at the November 18, 2009, hearing.

The Dugases have raised this same issue multiple times and have been unsuccessful on each occasion. *See* Memorandum and Order at 4-5, *Dugas v. Claron Corp.*, Civil Action No. 1:02-CV-679 (E.D. Tex. July 24, 2003) (affirming the bankruptcy court and finding that it had jurisdiction to correct its earlier order); *In re Dugas*, 115 F. App'x 674, 676-77 (5th Cir. 2004) (dismissing as frivolous the Dugases' appeal of the district court's affirmance and finding Appellants' argument that the bankruptcy court lacked jurisdiction to correct its earlier judgment "wholly without merit"), *cert. denied*, 544 U.S. 1032 (2005); Order on Plaintiff's Motion for Recusal, Plaintiff's Motion for Remand, and Defendant's Motion to Dismiss at 7-10, *Dugas v. Parker*, Civil Action No. 1:04-CV-113 (E.D. Tex. Apr. 14, 2004) (dismissing Mr. Dugas's individual action against the bankruptcy judge based on the same jurisdictional argument and sanctioning Mr. Dugas for frivolous filings, noting that "[t]he claims alleged [by Mr. Dugas] are so obviously factually and legally baseless that the Court finds that they are . . . an illustration of bad faith."); *Dugas v. Parker*, 124 F. App'x 824, 825-26 (5th Cir.) (affirming the district court and ordering additional sanctions against Mr. Dugas, finding that the bankruptcy court "was not wholly without jurisdiction" to vacate its earlier judgment and finding Mr. Dugas' arguments to the contrary frivolous), *cert. denied*, 546 U.S. 871 (2005). In light of the previous rulings by the district court and the Fifth Circuit, this court will not revisit Appellants' argument, which has been soundly rejected on numerous occasions.

D. Whether the Bankruptcy Court Was Barred by Principles of *Res Judicata*, Issue Preclusion, Judicial Estoppel, and/or Law of the Case Doctrine from Contesting the Dugases' Ownership of the Funds

In point of error B, Appellants argue that by confirming their proposed Chapter 13 Plan without objection from Claron, the bankruptcy court adopted their claim of ownership of the funds contained in their bankruptcy schedules. Accordingly, they contend that Claron and the bankruptcy court are now barred by the principles of *res judicata*, issue preclusion, judicial estoppel, and the law of the case doctrine from contesting their claim to these funds.

Confirmation of a Chapter 13 plan merely adjudicates whether the debtor's proposed plan meets the requirements of Bankruptcy Code § 1325. *In re Castillo*, 2009 WL 3854261, at *3. Although confirmation of a plan binds the debtor and creditors, there is no statutory provision or rule suggesting that confirmation of a plan has any preclusive effect with respect to the debtor's claims of ownership to certain property listed in the bankruptcy schedules. *Id.* (finding a similar argument "so clearly incorrect that the Court finds it difficult to explain."); *see IRS v. Taylor (In re Taylor)*, 132 F.3d 256, 262 (5th Cir. 1998). Accordingly, the bankruptcy court's confirmation of the Dugases' proposed Chapter 13 plan in no way validates their claim to the funds and has no preclusive effect upon the October 13, 2009, order.

Furthermore, even if the court were to entertain Appellants' argument, their bankruptcy schedules list the funds only as an "account receivable" against JSB. As the bankruptcy court observed, the existence of such a receivable would not give the Dugases any particular claim to the funds, but would only mean that, in the event JSB was successful in the Howell Action, the sums recovered would provide a pool of cash from which JSB could pay its debts. The fact that JSB might have used all or some of the funds to pay the alleged account receivable had it prevailed

13

in the underlying Howell Action does not make the funds property of the Dugases' bankruptcy estate. Accordingly, Appellants' argument is unavailing.

    E.    <u>Whether Clamont Energy Corporation, Inc. had a Valid Claim to the Funds</u>

In points of error C and G, the Dugases contest the validity of a settlement agreement between Claron and Jason Searcy ("Searcy"), Clamont Energy Corporation, Inc.'s bankruptcy trustee, in a separate adversary proceeding involving the funds (the "Searcy Action"). This issue, however, is not properly before this court. The Dugases were parties to the Searcy Action and participated in the hearing on Searcy's motion to approve the settlement agreement. *See* Order on Motion to Approve Compromise and Settlement Agreement at 1, *In re Clamont Energy Corp.*, Case No. 93-01031 (Bankr. E.D. Tex. Feb. 23, 1994). If they were aggrieved by the bankruptcy court's approval of the settlement between Claron and Searcy, their proper recourse was to appeal that decision in a timely manner, which they failed to do. *See* Judgment at 2, *Dugas v. Searcy (In re Clamont Energy Corp. Inc.)*, No. 02-41404 (5th Cir. Apr. 25, 2003). Because the bankruptcy court's order approving the settlement between Claron and Clamont was final, Appellants are precluded from litigating issues that could have been but were not raised in the earlier action. *See In re Gibraltar Res., Inc.*, 210 F.3d 573, 576-77 (5th Cir. 2000); *In re Albicocco*, No. 06-CV-3409, 2006 WL 2376441, at *9-10 (E.D.N.Y. Aug. 16, 2006).

    F.    <u>Whether the Bankruptcy Court Erred in Allowing Claron's Appearance in the November 18, 2008, Hearing</u>

In point of error D, Appellants contend that the bankruptcy court erred in allowing Glendon B. Adams ("Adams") to appear as a representative of Claron at the November 18, 2008, hearing. They maintain that Claron forfeited its corporate charter on February 11, 2005, and was barred from defending itself against their motion pursuant to § 171.252 of the Texas Tax Code.

This argument is a red herring. In asserting their motion, the burden remained on the Dugases to prove a violation of the automatic stay and the damages to which they are entitled. They were provided a full opportunity before the bankruptcy court to present evidence and litigate issues of law in support of their motion. They have not pointed to anything demonstrating that they were somehow prejudiced by Adams's participation in this hearing. To the extent that the bankruptcy court erred in allowing Adams to appear on Claron's behalf, the court finds that Appellants' substantial rights were unaffected and such error was harmless. *See* FED. R. BANKR. P. 9005; FED. R. CIV. P. 61.

      G.    Whether the Bankruptcy Court Erred by Refusing to Order Disgorgement Despite the Lack of Evidence that Claron Owned the Funds

Finally, in point of error E, the Dugases contend that the bankruptcy court erred by failing to order Claron to disgorge the funds despite the fact that Claron failed to present evidence at the November 18, 2008, hearing that it was the owner of the funds. Once again, Appellants misapprehend the scope of the Fifth Circuit mandate. The only issue before the bankruptcy court on remand was whether Claron violated the automatic stay and, if so, the amount of damages to which the Dugases were entitled. Relevant to this inquiry was whether the Dugases could demonstrate an ownership interest in the funds, which they failed to do. Whether Claron produced evidence of its ownership of the funds has no bearing on the bankruptcy court's decision, as such a determination is beyond the scope of the mandate.

III.    Conclusion

The bankruptcy court correctly followed the Fifth Circuit's mandate by analyzing the Dugases' motion as an action to enforce the automatic stay under § 362. Furthermore, the court correctly applied the law concerning stay violations to the facts of this case. The bankruptcy judge

15

did not err in determining that Claron violated the automatic stay by seeking release of the funds without leave from the bankruptcy court. The judge also did not err in finding that, because Appellants ultimately had no interest in the funds, their actual damages are limited to the amount they incurred in prosecuting the violation, namely, $1,020.00, plus post-judgment interest. The judgment of the bankruptcy court is AFFIRMED.

SIGNED at Beaumont, Texas, this 23rd day of August, 2010.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE